GREENWAY HOMES, A CORPORATION, PROSECUTOR, v. BOROUGH OF RIVER EDGE, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, RESPONDENT.

Submitted May 4, 1948—Decided August 9, 1948.

Before Justices BODINE and JACOBS.

For the prosecutor, *George I. Marcus* (*Ralph W. Chandless,* of counsel).

For the respondent, *Weleck & Weleck* (*Charles W. Weleck,* of counsel).

The opinion of the court was delivered by

JACOBS, J.  This matter is before the court pursuant to a writ of *certiorari* to review the validity of the provision of the amended zoning ordinance of the Borough of River Edge requiring 75 foot frontage in the residential zone and the action of the governing body in rejecting, as being in violation of the ordinance, a plan map submitted by prosecutor.

The prosecutor, Greenway Homes, is a developer engaged in erecting dwelling houses.  It purchased tracts of land in the Borough of River Edge and built homes in accordance with plan maps which were submitted to and approved by the Borough of River Edge Planning Board in 1945.  These homes were designated by the prosecutor as Greenway Homes

Section I and Greenway Homes Section II, and most of the plots therein had a frontage of 60 feet.

Thereafter the Planning Board recommended to the governing board of the borough that it adopt an ordinance prescribing a minimum frontage of 75 feet in the residential zones. On February 3d, 1947, and after compliance with statutory requirements pertaining to notice and hearing, the borough adopted an amendment to its zoning ordinance which contained a schedule providing for a minimum lot in the A residence zone of 7,500 square feet with 75 foot frontage. On March 5th, 1947, the prosecutor submitted to the Planning Board a proposed plan map which bore the designation Greenway Homes Section III, and which contemplated the erection of 56 homes, most of which would have frontage of 60 feet. This map was rejected by the Planning Board as being in violation of the ordinance of February 3d, 1947. Thereafter, the prosecutor submitted a revised map which contemplated the erection of 48 houses but still contemplated lots having less than 75 feet frontage. By letter dated April 15th, 1947, the Planning Board advised the Mayor and Council of the Borough that it had passed the "revised preliminary plan and recommends it to the Mayor and Council for approval to proceed with the final plans." On October 6th, 1947, a resolution was adopted by the Borough Council "that the plan of Greenway Homes Section III be rejected as the lots did not conform to the 75 ft. ruling." The writ of *certiorari*, by its terms, brings before us the ordinance of February 3d, 1947, and the resolution of October 6th, 1946.

The prosecutor's contentions are substantially (1) that the ordinance is invalid "as being arbitrary, capricious and unreasonable," and (2) that the Borough was unreasonable in failing to approve and act upon the recommendation of the Planning Board.

1.

The Borough of River Edge may be described as a small suburban residential community which has been developed largely through the building of one-family houses. Its first zoning ordinance was adopted in 1923 and its present zoning

ordinance, which was amended in February, 1947, was adopted in 1943. The 1943 ordinance increased pre-existing requirements so as to provide for a minimum frontage of 60 feet in residential zones and a considerable portion of the community has been developed along those lines. Approximately 435 acres, including prosecutor's land and located in the westerly and southwesterly section of the borough, remain undeveloped. The borough engineer described the prosecutor's land as within a "high type residential district" situated near the highest point of elevation in the borough. The Planning Board's consultant engineer testified that as early as 1945 he proposed the increase of frontage to 75 feet believing that this would be for the health, safety and welfare of the people. He expressed the further belief that the 75 feet requirement would lessen congestion and the fire hazard and have a beneficial effect in so far as light and air were concerned. He referred to the fact that at least ten municipalities within the county had adopted minimum front footage requirements of 75 feet or more. He acknowledged that, included among the considerations for its adoption, was the consequent reduced cost of municipal services rendered but denied that this was the controlling consideration.

In support of its opposition to the ordinance, the treasurer of the prosecutor corporation testified that most of the homes in the borough are on lots having 60 feet frontage; that similar homes would be suitable for erection on prosecutor's land and that the houses contemplated by it would be attractive and would be priced at $14,000 to $16,000. He expressed the view that the increased frontage would result in an increased sales price approximating $500 per home, and stated: "I wouldn't care if we can sell our houses and clean them up. I don't object to that, but the thing I'm deathly afraid of is we are going to get caught with a whole flock of houses we can't sell." There was other testimony in the record indicating that this fear is not well founded and that the moderate increase would be more than compensated by the attractiveness of the larger frontage.

It is well established that a zoning ordinance is presumed to be reasonable and that one attacking it "must bear the

burden of establishing the contrary." See *Yoemans* v. *Hillsborough Township* (*Supreme Court, 1947*), 135 *N. J. L.* 599; *Eastern Boulevard Corp.* v. *Willaredt* (*Court of Errors and Appeals, 1939*), 123 *Id.* 269. Prosecutor contends that the frontage restriction was adopted "not for the purpose of zoning but for the purpose of increasing tax revenues." The record in nowise supports this contention; on the contrary, it satisfies us that the frontage restriction has a proper relation to the general welfare and the purposes expressed in *R. S.* 40:55–32 and its validity is not impaired even though it be assumed that increased municipal revenue or reduced municipal cost was an additional consideration in its adoption. See *Simon* v. *Town of Needham,* 311 *Mass.* 560; 42 *N. E. Rep.* (*2d*) 516; 141 *A. L. R.* 688 (1942), where the court sustained a zoning ordinance prescribing a minimum area of one acre for house lots in residential districts, saying:

"There may be a difference of opinion as to the real advantages that will accrue from the larger lots and whether they are such as to lead one to the conclusion that the adoption of the acre area will result in a real and genuine enhancement of the public interests. It seems to us that a belief that such a result may be realized in this instance is not unreasonable. * * *"

"* * * The expense that might be incurred by a town in furnishing police and fire protection, the construction and maintenance of public ways, schoolhouses, water mains and sewers and other public conveniences might be considered as an element, more or less incidentally involved, in the adoption of a zoning by-law that will promote the health, safety, convenience, morals or welfare of the inhabitants of the town without imposing any unreasonable and arbitrary burden upon the landowners."

Nor are we impressed with prosecutor's contention that, since most of the lots in the borough on which houses have been built have 60 feet frontage, the increase to 75 feet is unreasonable. Indeed, if this contention were sound, municipalities would be obliged to apply to new areas the outmoded concepts visible in the old, despite the substantial advances being made in community planning. There is nothing in our law to compel such result.

## 2.

In view of our conclusion that the ordinance is not invalid, the remaining issue to be considered is whether prosecutor is entitled to any relief because of the governing body's refusal to approve and act upon the recommendation of the Planning Board embodied in its letter dated April 15th, 1947. Prosecutor asserts that such refusal was arbitrary but this contention cannot be accepted if the ordinance, which we have found valid, is to be permitted to effectuate its purposes. It seems to be undisputed that the prosecutor can readily change its plans so as to comply with the ordinance without hardship other than loss of some of its anticipated profits. This loss can hardly be considered as a controlling factor. See *Simon* v. *Town of Needham, supra:*

"The by-law does not prohibit the petitioner from developing his land as a site for homes, and although the restriction as to area might not permit him to secure as much profit as he would if the by-law had not been amended, yet this factor, while entitled to consideration in passing upon the reasonableness of the amendment, does not afford sufficient ground for striking down the by-law in the absence of a showing that it goes beyond what the protection of the public interests requires."

*Cf. Brandon* v. *Montclair* (*Supreme Court,* 1940), 124 *N. J. L.* 135, 149; affirmed (*Court of Errors and Appeals,* 1940), 125 *Id.* 367.

There is an item of evidence which is of concern but which, standing alone, is insufficient to alter the aforementioned conclusions. After the ordinance was adopted, another developer was evidently permitted to proceed without strict compliance with the frontage requirement. The borough engineer testified that the other development was dissimilar, primarily because it involved a plan having a curved street and circles, whereas prosecutor's plan presented a gridiron layout with subdivided plots. Although this evidence is not entirely satisfactory, we are not persuaded that it should result in further exceptions which would effectively nullify the ordinance. *Cf. Potts* v. *Board of Adjustment of the Borough of Princeton*

(*Supreme Court,* 1945), 133 *N. J. L.* 230, 237, where the court said:

"Ill-advised or illegal variances do not furnish grounds for a repetition of the wrong. If that were not so, one variation would sustain if it did not compel others, and thus the general regulation eventually would be nullified."

See, also, *Scaduto* v. *Bloomfield* (*Supreme Court,* 1941), 127 *N. J. L.* 1, 4.

The record before us does not in any sense establish that type of discriminatory municipal action aimed at prosecutor which might warrant voiding the ordinance as being in violation of the Constitution of the United States under the doctrine of *Yick Wo* v. *Hopkins,* 118 *U. S.* 356; 30 *L. Ed.* 220 (1886). See *Brandon* v. *Montclair, supra* (at *p.* 144).

The writ will be dismissed.