28 N.J. Super. 321 (1953)
100 A.2d 698
BOROUGH OF OAKLAND, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EMIL ROTH AND ELLA MAE ROTH, HIS WIFE, ALICE E. CASELLA AND CHARLES M. CASELLA, HER HUSBAND, GARRETT W. JUNTA AND ETHEL A. JUNTA, HIS WIFE, AND SHIRLEY TINTLE AND DONALD TINTLE, HER HUSBAND, DEFENDANTS-RESPONDENTS. INTERVENTION BY THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1953.
Decided November 12, 1953.
*322 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. James M. Muth briefed the cause for appellant (Messrs. Weber, Muth & Weber, attorneys).
Mr. Chester K. Ligham, Deputy Attorney-General, argued the cause for the State (Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey).
Mr. James A. Major argued the cause for respondents (Messrs. Major & Carlsen, attorneys).
*323 The opinion of the court was delivered by JAYNE, J.A.D.
It was resolved in the Chancery Division that the alleged cause of action of the borough was not maintainable. The present appeal implicates the propriety of the order dismissing the complaint.
The allegations of the complaint augmented by some stipulated matters set forth the following state of affairs which, for the purpose of the motion to dismiss, were necessarily acknowledged to constitute the factual basis of the alleged cause of action.
On July 10, 1936 the Mayor and Common Council of the Borough of Oakland, acting under the authority of existing legislation (L. 1930, p. 1039), created a planning board which thereupon organized, adopted a master plan for the physical development of the territory within the borough, promulgated a set of regulations relating to the subdivision of tracts of land, and has in other respects continued to perform the functions delegated to it by law.
The defendant Emil Roth was or perhaps has since become the owner of a tract of 58 acres of land situate within the bounds of the borough upon which he has opened an unpaved street known as Martha Place. In 1951 he proceeded to sell lots abutting on the street. On August 28, 1951 he conveyed a lot to the defendant Alice Casella, another on December 1, 1951 to the defendants Garrett and Ethel Junta, and a third on December 15, 1951 to the defendant Shirley Tintle.
In association with those circumstances and occurrences the complaint alleges that the lots so conveyed were fractional parts of a subdivision as defined by R.S. 40:55-1, as amended L. 1948, c. 464, p. 1902, § 1, and that those conveyances were made without the requisite filing and approval of any plat map of the subdivision by the planning board. The object of the action is to set aside and invalidate the designated conveyances and restrain such unsanctioned grants in the future.
The borough instituted the action in the pursuit of the statutory authority sought to be conferred upon it by R.S. *324 40:55-15, as amended L. 1951, c. 213, p. 768, § 1. It is advantageous to quote that section of the statute:
"If any owner or agent of any owner of any land transfers or sells or agrees to sell any land which forms a part of a subdivision as defined in this Title, before such subdivision has been approved by the approving agency, whether the planning board or governing body, the municipality in addition to any other remedy shall be entitled to institute and maintain a civil action in the Superior Court of New Jersey to restrain the transfer or sale or the performance of the agreement of sale and to set aside and invalidate any conveyance made pursuant to such transfer or sale. In any such action the transferee, purchaser or grantee of such land may be made a party or, if not made a party, may intervene therein, and the said transferee, purchaser or grantee shall be entitled to a lien upon the whole parcel, tract or plot of land from which the subdivision was made to secure the return of any deposit made or purchase price paid, and, also, a reasonable search fee, survey expense and title closing expense, if any. The said court shall have full jurisdiction to afford the said relief to the municipality and to the said transferee, purchaser or grantee, including the enforcement of said lien, and to afford incidental relief to any of the parties to such action. The right to bring any such action shall expire two years after the date of the recording of the instrument of transfer, sale or conveyance of said land and no such action shall be commenced after such expiration.
The provisions of this section shall not apply in any case in which the planning board shall have waived the requirements of its approval of the subdivision, and the governing body of the municipality may by resolution expressly waive the said requirements."
The defendants Casella and Tintle answered the complaint and asserted the permissible cross-claims against their co-defendant Roth. The defendants Junta chose to remain interested spectators. Since the constitutionality of the section of the statute was assailed, the Attorney-General intervened. The defendant Roth succeeded in his motion in limine to dismiss the alleged cause of action.
The trial judge concluded that in the enactment of R.S. 40:55-15 in its amended form the Legislature had omitted to supply reasonable and adequate standards by which either the planning board or the governing body of the municipality is to be guided and controlled in the exercise of the delegated power to waive "the requirements of its approval of the subdivision."
*325 Municipal planning as distinguishable from zoning received legislative authorization in our State in 1930. L. 1930, c. 235, p. 1039, et seq.; R.S. (1937) 40:55-1, et seq. The constitutional validity of such legislation was characteristically elucidated by Mr. Justice Heher in his decision in Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938). A reproduction here of his reflections would be unnecessarily repetitious; an endeavor to garnish them would be venturously ambitious. Judicial decisions continue rapidly to multiply concerning the legitimate exercise of governmental regulations under the sovereign police power. The flow of decisions eventuates because the regulations are themselves multiplying and their validity so often depends on the circumstances of the particular case. It remains true that it is less difficult to perceive the inherence of the police power than it is to delineate the boundaries of its regulatory capacity in subserving reasonably the needs of the general welfare. The public welfare, the needs of which are ever changing, is the constant foundation of the governmental power, but whether or not the power in the nature, extent, or delegation of its exercise is being misused frequently presents a justiciable question.
It is of interest to trace the successive pilgrimages made by the Legislature of our State in the field of municipal planning legislation, but our appellate considerations of the judgment in the present case are confined primarily to the provisions of chapter 213 of the Laws of 1951 amending R.S. 40:55-15, which in this decision we shall denominate the penalty section of the Municipal Planning Act of 1930.
It is noticed that the relative section in the act of 1930 (c. 235, § 14, p. 1046) ordained that any owner of land within a subdivision who "transfers or sells any land by reference to or exhibition of or by other use of a plat of a subdivision, before such plat has been approved by the planning board and duly recorded or filed in the office of the county clerk or register of deeds, * * * shall forfeit and pay a penalty of not less than one hundred dollars for each lot or parcel so transferred or sold," and the authority was *326 conferred upon the municipality to "enjoin such transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction" or "recover the said penalty by a civil action in any court of competent jurisdiction."
It is observed that the penalty section did not then authorize the institution of an action to nullify consummated conveyances or make reference to instances in which the planning board may have waived the filing of a map.
In the session of 1948 (c. 464, § 6, p. 1908) the Legislature appended by amendment the following proviso to the penalty section: "provided, however, that the provisions of this section shall not apply in any case in which the planning board shall have waived the filing of a map pursuant to this section." (Emphasis ours.)
The section so amended did not embody any expression of a delegated authority in the planning board to waive the filing of a map. However, it was this amendment of 1948 that initially introduced the so-called waiver qualification into the penalty section, otherwise the section remained unchanged. The section as amended does not appear to have been altered in respect of penalty and municipal redress by the enactment of L. 1950, c. 67, § 8, p. 124.
We have hereinbefore quoted the composition of the section as innovated by the enactment of L. 1951, c. 213, § 1, p. 768, and such was the text of the section at the time the defendant Roth made his conveyances.
It is to be realized that if measures originated under the police power of the Legislature tend reasonably to serve a legitimate interest of society, the wisdom, need, and appropriateness of the course pursued are not ordinarily the proper concern of the judiciary if the means employed are fairly adapted to that end. Vide, Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 420 (1950); Welsh Farms, Inc. v. Bergsma, 16 N.J. Super. 295 (App. Div. 1951); 42 Am. Jur. 610, § 209.
It is observed that the Legislature evidently deemed it conducive to the enforcement of the planning act to confer authority upon the municipal body at any time within a *327 period of two years after the recording of the deed of the inhibited conveyance to maintain an action in this court to invalidate and nullify the grant and console the grantee with a lien on the whole tract to secure the reimbursement of the purchase price "and, also, a reasonable search fee, survey expense and title closing expense, if any."
It is not difficult to envision the plight of an unwary grantee who has for one day less than two years established and maintained his family home on one of such lots. However, in reviewing the judgment rendered in the present action we are not required to determine whether that paragraph of the penal section is reasonable and possesses a fair and just adaptation to the object sought to be accomplished by it. Here we must, as did the trial judge, behold the complete embodiment including the appendage which provides that the action to invalidate the conveyance which is authorized by the preceding paragraph shall not be maintainable when the planning board shall have waived the requirements of its approval of the subdivision, and the governing body of the municipality may by resolution expressly relinquish the requirement.
Implication may be said to supply a delegation of authority to the planning board and municipal governing body to waive the required approval of the subdivision, notably a requirement so intrinsically essential to the accomplishment of municipal planning.
The trial judge was unable to discover in the statute any basic standard, policy or guiding rule in the observance of which the municipal bodies should perform that exceedingly critical function, and we perceive none. It would appear that those administrative agencies are not only empowered by the section of the statute to nullify inhibited conveyances, but also when deemed by them desirable to nullify the application of the statute. In the law there is a distinction between the delegation of legislative power and the abdication of it.
Our decisions have uniformly held that the Legislature in the enactment of regulatory statutes under the police power may not vest unbridled and arbitrary power in the *328 administrative agency but must furnish in such delegation of power a reasonably adequate standard by which the action of the agency is guided and circumscribed. The delegation of administrative authority to the agency may be pragmatically liberal but not entirely uncontrolled. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935); Veix v. Seneca B. & L. Ass'n., 126 N.J.L. 314 (E. & A. 1941); Van Riper v. Traffic Tel. Workers' Fed. of N.J., 2 N.J. 335, 353 (1949); N.J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 370 (1950); Ward v. Scott, 11 N.J. 117, 123 (1952).
We, too, are of the opinion that the section of the statute under which the prosecution of the present action was instituted was unconstitutional in the respect mentioned.
The Legislature presumably recognized the deficiency in the statute. Vide, L. 1953, c. 377 effective August 13, 1953, and the revised Municipal Planning Act of 1953, c. 433. Its accompanying statement, if we may venture to refer to it, contains the following comment:
"This revision removes conflicting, vague and contradictory elements in present legislation and at the same time corrects procedures of questionable legality. It strengthens the planning statutes and clarifies the responsibility of planning boards."
The revision becomes effective January 1, 1954. It is proverbial that nothing worth while is invented and perfected at the same time.
The judgment under review is affirmed.