71 N.J. Super. 255 (1961)
176 A.2d 555
DEERHURST ESTATES, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MEADOW HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 20, 1961.
*256 Mr. Seymour Margulies argued the cause for plaintiff (Messrs. Rubenstein & Glick, attorneys).
Mr. Saul J. Zucker argued the cause for defendant (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
PINDAR, J.S.C.
This is a suit to recover damages for an alleged breach of warranty in a contract for the sale of land. Under the contract executed June 14, 1954 the defendant, Meadow Homes, Inc. (hereafter Meadow), agreed to sell to Joseph S. Lenkowsky certain of the parcels of land as shown on the map entitled "Site Plan, Meadow View Estates, East Brunswick Township, Middlesex County, N.J., dated June 20, 1951" (hereafter Steuber map). Pursuant to express permission contained in the contract, Lenkowsky duly assigned his interest therein to the plaintiff Deerhurst Estates (hereafter Deerhurst) a corporation which he owns. The contract provides for the sale of 267 lots at $425 per *257 lot. The total subdivision area, as shown on the map, contains 359 lots allocated to 11 sections. A total of 92 lots was excepted from the contract (88 lots in Sections I and III and 4 lots in Sections V and VI), as they had evidently been built upon and sold by the seller. In addition, seller agreed to "deliver to Purchaser 69 Building Permits in the name of purchaser, or otherwise for erection of 69 dwellings on Sections IV and V according to plans" prepared by architect Steuber. The dimensions of each lot are substantially 60 feet wide and 110 feet deep.
The action sub judice was tried previously without a jury. The issues of liability and damages were determined in separate trials, resulting in a judgment for the plaintiff in the amount of $29,700. The court in deciding the question of liability found that the defendant had breached certain warranties of the contract (paragraphs 3(a) and (c), infra). In stating his conclusion therein that Meadow did not have the promised "tentative approval," the trial judge ruled as a matter of law that the parties' use of the phrase was a reference to N.J.S.A. 40:55-1.18 (50 N.J. Super. 140 (Law Div. 1958)). The Appellate Division reversed this holding and said in 64 N.J. Super. 134 (App. Div. 1960), at p. 152:
"Considering the use of the language in the instrument, and the purposes of the instrument as a whole, we cannot say that there exists no genuine issue of fact as to the meaning of the phrase, `tentative approval.'"
Therefore, the cause has been remanded to this court "for a factual determination, based on the surrounding circumstances and on the relevant testimony concerning their negotiations, of the parties' respective understanding of the phrase, `tentative approval,' at the time of its final insertion in section 3(b)." (64 N.J. Super., supra, at p. 153.)
Initially it is necessary for the court to review the history of the development of this land and the appropriate laws and regulations relating thereto.
*258 At a meeting on December 13, 1950 the East Brunswick Township Planning Board approved the plat as shown by the "Preliminary Plot Plan of Prominski Tract" drawn by William H. Baker (hereafter Prominski map). It appears that Baker made duplicates of this map; however, only one was stamped "approved" by the board. Inspection of all the Prominski maps presented in evidence, and also the Steuber map, shows that they are identical as to plot layout and dimensions.
On application of Meadow the township committee and the planning board approved for filing the following sections on the dates mentioned:

 Section I September 25, 1951
 Section III April 8, 1952
 Section IV November 25, 1952
 Section V December 23, 1952.

East Brunswick Township on December 23, 1952 adopted at the second and final meeting a zoning ordinance by which it changed lot areas, dimension requirements, zone boundaries, etc., but the provisions of such ordinance did not apply to the lands of Meadow since section II, paragraph (4)f, provided:
"No requirement as to Major Lot Areas or Dimension Requirements shall apply to Developments, plot plans of which are on file with the Planning Board prior to final passage of this Ordinance."
At the second and final meeting of the township committee on April 14, 1953 an ordinance increasing the minimum requirements was adopted providing (section V) that:
"In developments * * * no single family dwelling shall be erected upon a lot smaller than 15,000 square feet or upon a lot which is less than 100 feet in width * * *."
However, the saving clause of section II of the 1952 ordinance apparently prevailed to free the lots within the subject land from this requirement.
*259 Then on September 18, 1953, the Municipal Planning Act of 1953 (N.J.S.A. 40:55-1.1 et seq.) was passed by the Legislature and became effective January 1, 1954. See N.J.S.A. 40:55-1.29. The provision of this act which contains the phrase "tentative approval" states:
"The governing body or the planning board, as the case may be, may tentatively approve a plat showing new streets or roads or the resubdivision of land along a mapped street. This tentative approval shall confer upon the applicant the following rights for a 3-year period from the date of the tentative approval:
(1) that the general terms and conditions upon which the tentative approval was granted will not be changed.
(2) that the said applicant may submit on or before the expiration date the whole or part or parts of said plat for final approval." N.J.S.A. 40:55-1.18. (Emphasis added)
Pursuant to the Municipal Planning Act of 1953 the township passed an ordinance on a first reading at the regular meeting of the township committee on June 8, 1954, which was to be considered for final passage on second reading at the meeting to be held June 22, 1954 (see Exhibit p-13), and adopted the ordinance at the meeting held on June 22, 1954. It provides, inter alia, the rules and regulations governing the submission of: a sketch plat, a preliminary plat of major subdivision for tentative approval, and a final plat of major subdivision. It specifies in detail the procedures and requirements to be furnished for submission of each plat.
With pertinency herein, after the adopted ordinance of June 22, 1954 the township committee on December 15, 1954 amended the aforementioned ordinance of 1952 "by the deletion therefrom of paragraph 4(f)," the saving clause.
Now, the controlling provisions of the questioned contract of sale can be considered, but it must be initially noted that such contract was executed during the interim period between the effective date of the Municipal Planning Act of 1953 and the final passage of the East Brunswick ordinance of 1954, adopted pursuant to such act.
*260 The warranties expressed in the contract are as follows:
"3. Seller represents and warrants that:
(a) * * *
(b) The sub-division as outlined in the above mentioned site plan (Steuber map) has been tentatively approved by the Planning Board of East Brunswick Township and all other agencies having jurisdiction over sub-division of lands.
(c) * * *
(d) There is no regulation under or provision of zoning Planning, Building Permit, Building Ordinances of East Brunswick Township which is inconsistent with the original submission of the entire sub-division by seller as outlined by the above site plan as to lot sizes, street layout, grades, street improvements, or other requirements so that there is nothing in said ordinances or regulations thereunder that will prohibit the filing and approval of the remaining 7 sections and the erection thereon of buildings similar to those erected in Sections I and III and similar to the plans filed or proposed for Sections IV and V." (Emphasis added)
The plaintiff maintains that "tentatively approved" in paragraph 3(b) above refers to statutory approval as stated in N.J.S.A. 40:55-1.18, and had the defendant received such approval, as he warranted, then the lots purchased would not have been subjected to an increase, as aforementioned, in the minimum requirements for a three-year period from the date of such approval. The defendant contends that the questioned term in paragraph 3(b) of the contract refers merely to the approval of the Prominski map on December 13, 1950, which at the time of the contract would apparently have exempted the said lots from the prevailing ordinance of 1953.
The cases interpreting the Municipal Planning Act of 1953 illustrate that it is an enabling act, i.e., it confers upon the municipalities of this State the power whereby "the governing body (of a municipality) may by ordinance grant any of the powers exercisable by a planning board to a planning board * * * but no particular power may be exercised until expressly granted by ordinance and until compliance is made with the conditions, standards, procedures and regulations enumerated in the sections describing such power." N.J.S.A. 40:55-1.3 (Emphasis added).
*261 The Supreme Court in Levin v. Livingston Tp., 35 N.J. 500, 507 (1961), stated:
"As this court said in Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 435 (1958): `The * * * [state planning] act was designed to afford municipalities desiring the advantages of its provisions to enact comprehensive regulatory standards which would facilitate sound and orderly future municipal growth * * *.'"
Consequently, the provision of N.J.S.A. 40:55-1.18 for approval of plats is not one which controlled the lots here in question at the time of the contract. The adoption of this procedure for approval is not mandatory but permissive, exercisable by municipal ordinance, and therefore it need not even be accepted by the municipality. See Hilton Acres v. Klein, 35 N.J. 570 (1961); Levin v. Livingston, supra, 35 N.J., at p. 512; Gruber v. Raritan Tp., 68 N.J. Super. 118, 130-131 (Law Div. 1961); cf. Kotlarich v. Ramsey, 51 N.J. Super. 520, 526 (App. Div. 1958). In fact, the Supreme Court in Hilton, supra, inferred that such provision has not been adopted by all municipalities. In relation to a developer's protection for a period of three years after the granting of tentative approval it said at page 580: "* * * consideration of the developer's interest, * * * is found in the provisions permitting advance determination of the conditions deemed requisite for the particular subdivision by the tentative approval procedure (employed in practically all ordinances) * * *." (Emphasis added)
Upon this determination it is evident that prior to June 22, 1954 there could have been no application for statutory "tentative approval" of any land within the East Brunswick Township; in the absence of an implementing local ordinance, there was no agency empowered to grant such approval. So paragraph 3(b) of the contract, denoting a prior tentative approval, plainly could not have been fulfilled before the execution of the contract if plaintiff's assertion of the intended meaning of the phrase is accepted. Thus, *262 there appears cogent reason to doubt the asserted intention of plaintiff.
However, it is possible that the parties intended the seller obtain such approval subsequent to the contract date, although such is contrary to the precise language of the warranty, as it is worded in the past tense. But this, too, would be a serious straining of interpretation. Not only would it comprise a warranty to obtain approval under an ordinance not yet finally adopted but also it would require conformity to the several stringent requirements requisite before applying for such approval. Also, the time elements under such implementing ordinance show that the tentative approval most probably would not have been granted prior to August 2, 1954, when the seller relinquished his title to the property.
On the other hand, Meadow claims that the "tentative approval" contemplated by the parties in the contract refers to the approval on December 13, 1950 by the planning board of the preliminary plot plan of the Prominski map. Such approval, as preserved by the saving clause in the ordinance of 1952, may well have convinced the buyer at the time of the execution of the contract that he need not comply with the expanded lot size requirements of the 1953 ordinance.
The term "tentative approval" is not used in any special sense in the statute  it is not expressly defined therein as are some dozen other terms  so the ordinary meaning of the words is to be used. In fact, the Supreme Court in Levin, supra, referred to such as "preliminary approval" (35 N.J., at p. 512), as did the East Brunswick ordinance (article V, section 2(f)) which was adopted pursuant to the enabling statute. There is no technical usage to be annexed to the term outside of the fact that those particular words were used in the state planning act and local ordinances adopted pursuant thereto. It would indeed seem imprudent, to say the least, under the factual circumstances evident from the related lack of municipal action, for the parties to have intended to rely upon the indecisive expression "tentatively *263 approved" where such a unique and burdensome warrant, as here, is being considered.
Accordingly, it is determined as a matter of fact that the parties intended the approval in 1950 of the preliminary plan of the Prominski map to be the subject of the warranty, but in any event not to be within the effectual intent of the statute, the Planning Act of 1953.
This conclusion is not in any way inconsistent with the proof deduced from the credible testimony received at the trial. Considering the testimony relevant to the negotiations of the contract, although much of it is in sharp conflict, the following determinations of fact are made therefrom: (1) both parties to the contract, and their respective counsel, were aware of the enactment of the Municipal Planning Act of 1953 and the provisions of section 18 thereof, prior to the execution of the writing, and that the seller did not at that time have the "tentative approval" contemplated by the statute; (2) with respect to such statutory approval, the seller informed the buyer that he could sell and was offering to sell only what it had and no more.
The plaintiff, therefore, has not sustained the burden of proving a breach of warranty by the defendant. In view of this determination the judgment for damages in the amount of $29,700 should be resolved accordingly.
Conformable judgment should be presented.