64 N.J. Super. 281 (1960)
165 A.2d 819
HILTON ACRES, A NEW JERSEY CORPORATION; E'DOR BUILDING CORP., ETC., ET AL., PLAINTIFFS-APPELLANTS,
v.
JOHN N. KLEIN, MAYOR OF THE TOWNSHIP OF ROXBURY, NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1960.
Decided November 30, 1960.
*285 Before Judges CONFORD, FOLEY and HALPERN.
*286 Mr. Herbert S. Glickman argued the cause for plaintiffs-appellants (Mr. Frank C. Scerbo, attorney).
Mr. John R. Miller argued the cause for defendants-respondents (Messrs. Barrett and Miller, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs are real estate developers who brought this action in the Law Division to compel the defendant officials of the Township of Roxbury to permit them to proceed with a subdivision development under a tentative, and, in part, final approval accorded thereto by the planning board of the municipality. The Law Division granted summary judgment to defendants. Important and novel questions of construction of the Municipal Planning Act (1953) are presented. L. 1953, c. 433 (N.J.S.A. 40:55-1.1 et seq.).
Basically, the record before us consists of the pleadings, affidavits and exhibits on motion by plaintiffs and cross-motion by defendants for summary judgment. Since we have decided that there must be a reversal and remand for trial of material issues of fact, we will also refer to factual representations by the parties not strictly within the record but partially explanatory of why remand of a portion of the case is necessary. However, we do not condone the references in appellate briefs to factual matters not of record, and all material facts will have to be stipulated or satisfactorily proved on remand.
In April 1956 plaintiffs submitted to the planning board an application for subdivision of their 124-acre tract of land into 254 residential lots as shown on a plat, each of which would satisfy the then existing zoning requirement of minimum lot areas of 15,000 square feet for a "B" residence district. Under the ordinance establishing a planning board in this municipality, the board is vested with full powers of approval of subdivision applications ("strong board") rather than constituted as an initial reviewing and *287 reporting agency to the governing body. See Kotlarich v. Ramsey, 51 N.J. Super. 520, 526-527 (App. Div. 1958), a comprehensive discussion of the general scheme of the statutory plan for approval of subdivisions (per Judge, now Mr. Justice, Hall); also Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 432-441 (1958), discussing the impact of the 1953 act upon lands platted under the Old Map Act.
The plaintiffs' plat was submitted to the Morris County Planning Board for review, as required in cases where county road drainage may be affected (N.J.S.A. 40:27-12). After study, that agency informed the local planning board that the existence of a high water table and low spots in the tract indicated that individual sewage disposal systems might not be satisfactory; moreover, since the township had no sanitary sewer system, that consideration be given to the treatment and disposal of sewage through a disposal plant, or, in the alternative, to a requirement for larger building lots.
On June 7, 1956 the planning board granted tentative approval to the preliminary application for 254 lots, subject to the condition, inscribed on the map submitted by the plaintiffs, "Conditional approval June 7, 1956, subject to percolation tests to establish the advisability of a disposal plant."
By amendment of the township zoning ordinance effective November 12, 1956 the minimum size of lots in the "B" residence district was increased to 30,000 square feet. In October 1959 (subsequent to the filing of this action) a comprehensive new zoning amendment was adopted pursuant to which the area in question became an R-1 residence district calling for minimum lot areas of 40,250 square feet or, where the planning board approved, in large-scale subdivisions, 34,500 square feet. Until the events of June 1959 hereinafter related, however, none of the township officials apparently considered the more restrictive lot area requirements applicable to plaintiffs' subdivision application.
*288 In November 1957 one of the plaintiffs applied for and received approval from the planning board of a minor subdivision of three building lots on high land along pre-existing Pleasant Hill Road, which ran through the southeasterly corner of the entire tract. These lots were of areas exceeding 15,000 square feet but less than 30,000 square feet. Beginning in September 1958 plaintiffs constructed model homes on two of these lots at a cost of approximately $21,000 each, exclusive of land, and installed curbing on and widened the existing county road, at a cost of about $1,724, as required by the planning board.
In the early part of 1958 plaintiffs had sought approval of the entire proposed subdivision from the Federal Housing Administration in order that individual homes to be erected might qualify for federally insured mortgages. The federal agency made various recommendations relating to the development of the tract, including the construction of a sewage disposal plant. From an affidavit of the clerk of the planning board it appears that at a meeting of the board August 21, 1958 consideration was given to and concurrence had in certain of the said recommendations, and a letter sent to the Federal Housing Administration to that effect with the approval of the representative of the plaintiffs. But the planning board never concurred in the recommendation of the federal agency for the location of a proposed sewage disposal plant on certain land adjacent to plaintiffs' tract, then intended for public recreation and subsequently put to such use. Plaintiffs claim, and defendants deny, that the board also informed the federal agency that no sewage plant would be considered for location on plaintiffs' tract.
Plaintiffs assert, although the record does not verify the fact, that they applied for and received from the planning board in July 1958 final approval of "Section 1" of the tract, comprising 17 lots of slightly over 15,000 square feet each on Pleasant Hill Road, subject to the filing of a subdivision improvement performance bond guaranteeing *289 installation of required improvements. Defendants conceded at the oral argument that the minutes of the planning board show such action. Plaintiffs' brief asserts that they failed to file the necessary bond for "Section 1" and proceed with its development because the lending institution involved insisted they first develop the interior of the tract.
On October 16, 1958, at plaintiffs' request, the planning board extended the tentative conditional approval of the subdivision as a whole, beyond the original three-year expiration date specified by statute, to October 17, 1961. See N.J.S.A. 40:55-1.18 and the discussion under I, infra.
Plaintiffs eventually applied for final approval of "Section 2" of the tract, consisting of 25 lots plus the two upon which model homes had been erected, all of these being of about 15,000 square feet in area, and situated on high ground. On May 21, 1959 the board granted final approval to this portion of the subdivision subject to receipt of a subdivision improvement performance bond. It is asserted by plaintiffs and undenied by defendants, however, that the municipal engineer never designated the estimated improvement costs, as required by the subdivision ordinance of the township.
On June 7, 1959 the planning board wrote to plaintiffs that the final approval of "Section 2" was an error, since the 25 proposed lots failed to conform to the minimum lot area specifications of 30,000 square feet established by the zoning ordinance amendment of November 1956. That action precipitated the institution of the present litigation in July 1959. Notwithstanding its pendency, plaintiffs in August 1959 applied for approval of two minor subdivisions, each for three lots along the southerly side of Pleasant Hill Road, each lot complying with the 30,000 square foot requirement. Approval of these was granted on August 6 and August 17. The parties have not argued the effect, if any, of these minor subdivision approvals on the status of *290 either of the final approvals mentioned above, and we therefore express no opinion thereon.
Further references concerning sewage disposal are made hereinafter.

I.
Although no opinion or findings were filed in the Law Division, it appears from the briefs and argument before us that the major legal issue presented is whether, as defendants contend, the tentative approval granted in June 1956 for a subdivision geared to 15,000 square foot lots was nullified by the subsequent amendment of the zoning ordinance increasing the lot area minimum to 30,000 square feet. Plaintiffs argue that they were protected against such a change for three years from June 7, 1956 by virtue of the following provision of N.J.S.A. 40:55-1.18:
"The governing body or the planning board, as the case may be, may tentatively approve a plat showing new streets or roads or the resubdivision of land along a mapped street. This tentative approval shall confer upon the applicant the following rights for a three-year period from the date of the tentative approval:
(1) that the general terms and conditions upon which the tentative approval was granted will not be changed.
(2) that the said applicant may submit on or before the expiration date the whole or part or parts of said plat for final approval."
Defendants' position is that "general terms and conditions" in (1) of the quoted excerpt does not include the minimum area requirements of a zoning ordinance. The precise question has not heretofore been passed upon by an appellate court. See Beams v. Mayor and Council of Borough of Lincoln Park (Docket No. L-12761-58 P.W., Super. Ct., Law Div., Nov. 5, 1959), apparently in support of defendants' position, and Levin v. Livingston Twp., 62 N.J. Super. 395 (Law Div. 1960), construing the statutory language quoted above as set forth in a subdivision ordinance as not including within "general terms and conditions," specifications for street paving, but including "lot *291 lines and sizes" (at page 403). The statute itself is not mentioned.
Preliminarily, we notice that plaintiffs failed to exhaust the remedy of administrative review by the governing body of the planning board revocation of final approval. N.J.S.A. 40:55-1.19 (see Kotlarich v. Ramsey, 51 N.J. Super. 520 (App. Div. 1958)), but we pass the point, not made by defendants, since the reason given by the planning board raised only an issue of law, more appropriate for disposition by the court (id., 51 N.J. Super., at page 539).
Defendants' basic position is that tentative approval of a subdivision plat gives a developer no greater rights than would attend a final approval, and that in the latter case, by analogy to settled principles applicable to landowners seeking to enforce rights to build free of the effect of subsequently adopted zoning ordinances or amendments thereto, the latest municipal legislation controls, absent justified and substantial reliance on the earlier status. See Tremarco Corporation v. Garzio, 32 N.J. 448 (1960), and authorities cited therein. However, the analogy will not hold if the Legislature has evinced by the new Municipal Planning Act an intent to afford greater protection to the landowner in the case of the kind of land subdivision here involved than that given by the law to landowners, generally. A careful study of the framework and language of the act, in the light of its purposes and objects, convinces us that such intent is manifest.
It is first to be noted that the three-year immunity from change afforded by N.J.S.A. 40:55-1.18 applies only to plats showing new streets or roads or the resubdivision of land along a mapped street. Contrast the statutory intent to authorize local exemption from official approval of plats where the number of new lots is less than a designated number, or where new streets are not involved, N.J.S.A. 40:55-1.14, or, in the latter case, to permit approval by a subdivision committee of the planning board. In general, then, the concept for immunity on tentative approval is *292 geared to subdivision developments of the larger kind, where substantial investment of time, effort and money is contemplated, and the risk of capital loss is commensurate. The three-year immunity is fairly to be construed as intended to afford reasonable assurances to developers of that scope that they may safely make the kind of investment thus envisaged, after gaining a tentative planning board or municipal approval (as the case may be), without risk of major or substantial disturbance of their plans by the local authorities for the specified three-year period. To this qualified extent the statutory policy is for a period of enforced immobility of the local regulatory power relative to the particular subdivision development. Only such subsequent changes during the three-year period as do not disturb the "general terms and conditions" upon which the tentative approval was granted are permissible. We should not here attempt to particularize the whole range of such terms and conditions. But there is cogent evidence of their comprehension of building-lot sizes.
First, the matter of individual lot sizes is probably the most important single factor in the developer's over-all planning of his project. It determines the number of dwelling units the tract will produce  a matter not only integral to his cost accounting but closely intertwined with financing, both his own and that of the purchasers of homes. Size and shape of lots are obviously related to each other, and both such elements in turn affect street and road layout, the latter probably the second most important physical attribute of the plat. Upon the primary factors of dimensions of plots and road layout, depend, largely, many other essentials, such as number, size and location of utility connections, curbing, road improvements, drainage facilities and the other improvements mentioned in N.J.S.A. 40:55-1.21.
Second, and practically conclusive of the legislative intent, is the second paragraph of N.J.S.A. 40:55-1.15, dealing with the delegation to municipalities of the fixing *293 of standards for approval of design of subdivisions and of improvements, as well as of the procedure for submission of plats, which expressly declares that the provisions of the subdivision ordinance concerning "minimum lot sizes and lot area requirements" shall be identical with those of the zoning ordinance, if provided for in the latter, otherwise to be fixed by the subdivision ordinance. This clearly manifests a legislative design that the size of lots is a basic and fundamental element of the subdivision plat upon the entirety of which the local agency passes its judgment of approval. That characteristic of the plat submitted by the developer is, in every realistic sense, one of the "general terms and conditions upon which the tentative approval [is] granted."
The handling of this problem in the legislation of other states is of interest, but not controlling here. For example, in Connecticut subsequent zoning regulations need not be complied with if the previously filed subdivision application conforms with all then existing regulations. Gen. Stats. § 8-28b (effective May 25, 1959). Upon final approval and filing of a subdivision plat no lots shown thereon need to comply with subsequent zoning changes for a period of three years from the date of approval. Id. § 8-26a (1959). In Massachusetts immunity from subsequent zoning change is granted after the submission of a preliminary plan, provided the final ("definitive") plan is submitted within seven months of the submission of the preliminary plan and duly adopted thereafter; lots on a finally approved plan are immune from subsequent zoning change for a period of three years. Gen. Laws, C. 40A, § 7A (1957), as amended in 1959. New York apparently provides for no immunity prior to approval and filing in a public office of the subdivision plat, but protects against subsequent zoning change affecting lot sizes for three years if the municipality has both a zoning ordinance and a planning board; for two years if there is only one and not the other; and for one year if there is neither. McKinney's Consol. *294 Laws, Town Law, c. 62, § 265-a (1960); Id., Village Law, c. 64, § 179, sub. 2, as amended L. 1960, c. 1061. See Stickel and Collins, "Report of Committee on Zoning and Planning," 23 Nimlo Municipal Law Review (1960), pp. 424, 428.
Evidential material in New Jersey legislative history is sparse. Nothing helpful is found contemporaneous with the adoption of the act in 1953. A bill was introduced in the New Jersey Legislature in 1959 (A-214) which would, inter alia, have expressly amended the statute to include, within the three-year immunity, protection against subsequent zoning changes as to use, size of lots, side-yard restrictions and street widths. It failed of passage. This circumstance does not, of course, necessarily indicate legislative intent as to the meaning of the statute as adopted, since the failure of amendment may mean legislative satisfaction that the act as it stands sufficiently expresses the same intent or that the proposed amendment was objectionable for other reasons. Note the amendment of the section in question in respects not here material by L. 1960, c. 145, which left the immunity provisions intact.
Defendants place strong reliance upon Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94 (1957), and Lake Intervale Homes, Inc. v. Parsippany-Troy Hills Township, supra (28 N.J. 423), and statements therein to the effect that municipal approval of plats does not necessarily assure the right to build on lots delineated thereon as against subsequent municipal enlargement of minimum building lot sizes under zoning ordinances. Neither of these cases, however, had to deal with or construe the provision of the 1953 act here under consideration. Moreover, the Lake Intervale Homes case involved platting under the Old Map Act, R.S. 46:23-1 et seq. (since repealed, L. 1953, c. 358, § 7, p. 1941, and supplanted by N.J.S.A. 46:23-9.1 et seq.). The significant differences between the scope and effect of that act and the Municipal Planning Act (1953) are instructively developed in that opinion (28 *295 N.J., at pages 433-437) and illumine the material differences between the issues therein and that which we are presently considering. The Ardolino case, supra, moreover, involved lots subdivided prior to the 1953 act, and apparently realigned pursuant to the latter act; but only three lots were so realigned, and there was no subdivision platted and approved under the present act. These decisions do not militate against the conclusion we have arrived at hereinabove as to the meaning and effect of N.J.S.A. 40:55-1.18.
Consequently we conclude that the revocation by the planning board of its final approval of the subdivision as to "Section 2" was unwarranted insofar as based upon the November 1956 zoning amendment increasing minimum lot sizes.

II.
Plaintiffs contend that their statutory rights consequent upon the tentative approval of the entire subdivision remain viable until October 1961 by virtue of the extension by the planning board of the approval until that date. The subdivision ordinance purports to permit the planning board to grant extensions of the three-year period without expression of limitation. The right to extend was not challenged by defendants in their original brief. At the argument this court raised that question, as it bears upon part of the relief sought by plaintiffs, and we requested and have received supplemental briefs. Defendants now contend that provision of the ordinance is void as beyond the legislative delegation of power, and in conflict with the express limitation of three years in the act.
We are in accord with defendants' position. To be kept in mind is that we are not confronted with the effect of an extension considered in the abstract. The thrust of plaintiffs' position is that the immunity from change of the lot sizes vouchsafed by the statute continues *296 not only during the three-year period fixed in the statute but for such extended period as the municipality may choose to confer  here, until October 1961. The argument almost answers itself. The claimed immunity even for the three-year period is debatable, and we have resolved that question in favor of plaintiffs' position only because the language and purpose of the act appear to us to require that result. But to permit the governing body to authorize by ordinance an extension of the period of immunity specified in the enabling act at a fixed term without specification or reasonable implication of such power, would be to countenance the local overrunning of a deliberate and unambiguous legislative demarcation of the extent of delegated local power in a most vital area of public policy. See Wagner v. Newark, 24 N.J. 467 (1957). The general local power of superintendence by zoning regulations over land uses cannot be eroded except by clear legislative authorization. We do not find it here in the respect contended for.
Plaintiffs invoke the constitutional mandate of liberal construction of municipal powers. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952). But construing the planning power liberally in this context at the same time restricts the municipal zoning power. In the specific resulting conflict of policies we cannot find the planning discretion to have been projected by the Legislature as broadly as claimed, particularly in light of the express authorization of time extensions in other respects in the same section and in other parts of the act. See N.J.S.A. 40:55-1.19, 1.20. See Muldoon, "The Practical Background of the Zoning and Planning Powers of the Present and Future," 43 Mass. L.Q. 13 (1958); Kramer, Foreword to "Land Planning in a Democracy," 20 Law & Contemp. Prob. 197, 198 (1955).
The provision of the ordinance under discussion is void, and plaintiffs cannot take any benefit from it.
Plaintiffs invoke the rule of Jantausch v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), affirmed *297 24 N.J. 326 (1957), arguing that the extension was at least a debatably valid and good-faith action of the local agency and that justified reliance on it by the property owner should afford him protection. We entertain considerable doubt that the Jantausch rule is presently applicable. Here protection is sought not for one relatively small parcel of property but for 124 acres of land not yet, except in small measure, improved. Substantial public interests are at stake and militate for nullification of the excess of agency power here exerted. In any case, however, we think it conclusive that no substantial expenditure is shown to have been made by plaintiffs on the strength of the extension, which did not come until October 1958, by which time the bulk of the improvements and expenditures made by plaintiffs prior to the revocation of final approval in June 1959 had been concluded (an affidavit by one of the plaintiffs states they broke ground and completed the model homes in September 1958; moreover, these homes appear to be readily saleable).
We hold that the plaintiffs may take no benefit from the extension.

III.
Plaintiffs' brief describes as the "basic question involved in this appeal" whether "plaintiffs have the right to build on the lots as shown on the map which has received tentative approval." It is clear, however, that a condition precedent to the right to building permits is a final approval of the plat or the portion wherein the right to build is asserted. N.J.S.A. 40:55-1.39 (Official Map and Building Permit Act (1953)); see Cella v. Cedar Grove Board of Adjustment, 45 N.J. Super. 585, 592 (Law Div. 1957). In the posture of the facts when this action was brought it is far from clear that plaintiffs were entitled to building permits for any part of the tract (other than the approved minor subdivisions). Most of the tract had received no final *298 approval, and "Sections 1" and "2" only conditional final approval, with the conditions not clearly shown to have been even yet fulfilled. We consequently approach the remaining issues from the viewpoint that what has yet to be decided in this litigation is the extent of plaintiffs' rights, if any, to unconditional final approval of any part of the subdivision or to the opportunity to comply with unfulfilled conditions as to any partial approval.
We at once dispose of the matter of the bulk of the plat  the portion never given any final approval, even conditional. Three years having expired from the date of tentative approval without submission thereof by the developer for final approval, plaintiffs' rights in respect thereto under the original application have expired perforce of the clear implication to that effect of the act. N.J.S.A. 40:55-1.18. This holds true entirely independently of the contention by the defendants that plaintiffs never satisfied the conditions of the tentative approval as to sewerage tests and in other respects. See infra. Plaintiffs cannot, in this phase of the case, rely upon expenditures they made during the three-year period. It is clearly implicit in the statute that expenditures under a tentative approval are damnum absque injuria as to the whole or any portion of a plat which the applicant does not process through to a proper application for final approval within the three-year period.
Of course, plaintiffs are free to submit a new application, but they will then be subject to such zoning and other proper regulations as may exist at the time they apply.

IV.
As noted in the statement of facts above, it is claimed by plaintiffs and admitted by defendants that they received conditional final approval of "Section 1" in July 1958. This was the section they never went ahead with because their financing institution required them to develop an interior portion of the tract first. The question consequently presents *299 itself whether that planning board approval is still in effect in view of the provision in the last paragraph of N.J.S.A. 40:55-1.18 that:
"The final approval by the governing body or the planning board, as the case may be, of a plat showing a new street or the resubdivision of land along a mapped street shall expire ninety days from the date of such approval, unless within the period such plat shall have been duly filed by the owner or his agent with the county recording officer. The governing body for good cause shown may extend the time for plat filing for a period not to exceed ninety days."
We think plaintiffs' rights in respect of "Section 1" have expired perforce of the statute, whether or not it is considered that they obtained a statutory final approval thereof in July 1958. If not, this section is subject to our treatment of plaintiffs' rights as to the remainder of the tract in III, supra. If there was such final approval, they never filed the plat, and, therefore, more than 90 days having gone by (and 90 days beyond that), the final approval has "expire[d]."
Were it argued that plaintiffs relied upon the extension of tentative approval granted by the planning board in withholding action on "Section 1," our holding in II, hereinabove, as to the invalidity of the extension, and our reasoning there as to the inapplicability of the Jantausch principle, remain pertinent. There is no showing of substantial expenditures by plaintiffs in reliance upon the extension.

V.
We turn to the status of "Section 2." Defendants' revocation of the final approval thereof in June 1959 having been improperly based on the prior enlargement of minimum lot sizes under the zoning amendment, the question arises whether defendants may, as they do, assert in justification of their action the fact that plaintiffs failed in various other respects to meet the conditions of the tentative and final approvals.
*300 The most important of these matters is that of sewerage disposal. Under the local subdivision ordinance, there being no sanitary sewer system in the area, percolation test results of the soil should have been submitted with the preliminary plat, but were not. However, the planning board accepted the plat subject to later submission of such tests. We incline to the view that submission of tests with the preliminary plat was directory rather than mandatory, so long as satisfactorily effected prior to final approval. The record does not clearly indicate whether such tests were ever made or submitted or what they showed. We are confronted with unclear and conflicting representations as to the facts in this regard in brief and argument. Plaintiffs have improperly included in their reply brief correspondence on the subject of providing a disposal plant, between the municipality and the Federal Housing Administration. That some kind of accord on the subject of sewerage tests was arrived at between plaintiffs and the planning board would seem inferable from the fact that final approval of "Section 2" (and, apparently, of "Section 1") was granted free of any reference to a condition concerning sewerage or soil tests. However, we cannot undertake any adjudication as to these matters in the light of the cloudy state of the factual record before us and the absence of factual conclusions by the trial court. The same considerations apply to miscellaneous other technical objections now asserted by defendants in respect of the validity and survival of prior approvals. Not knowing the facts, it would be dangerous to essay excursions into hypothetical legal principles possibly applicable. We cannot on this record determine with any assurance that plaintiffs had no legal rights surviving under the tentative or final approval of "Section 2," as of the date of revocation of the final approval. Plaintiffs are entitled to be remitted to their status on the facts as of that date. As to whether, or upon what conditions, they will be entitled to building permits, assuming satisfaction of legal requirements as to *301 final approval, we cannot venture to say on this record. The special problems implicated in that inquiry have not been argued.
We must conclude that, except for those portions of the subdivision outside "Section 2," summary judgment was erroneously awarded against plaintiffs. The facts relevant to plaintiffs' status and rights as to that section will have to be explored at a trial, after pretrial conference, and appropriate conclusions of law and ultimate determinations arrived at on the basis of the resulting findings of fact.
Insofar as concerns the subdivision as a whole, exclusive of "Section 2," the judgment is affirmed. In respect of "Section 2" the judgment is reversed and the cause remanded for further proceedings consistent with this opinion. No costs.