113 N.J. Super. 333 (1971)
273 A.2d 775
RICHARD M. SANDLER, LEWIS N. SANDLER, AND SANDLER AND WORTH, INC., PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF SPRINGFIELD, H.B. & F. REALTY CO., AND W.D. SNYDER & SON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1970.
Decided February 16, 1971.
*336 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. Murray J. Laulicht argued the cause for appellants (Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher, attorneys).
Mr. Andrew M. Epstein argued the cause for respondents (Messrs. Epstein, Epstein, Brown, Bosek & Turndorf, attorneys).
Mr. Fred R. Gruen argued the cause for respondent Board of Adjustment of the Township of Springfield (Messrs. Gruen & Goldstein, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Plaintiffs, adjoining property owners, appeal from a judgment of the Law Division that defendants H.B. & F. Realty Co. and W.D. Snyder & Son are entitled to a permit to build a restaurant on their resubdivided *337 28,182-square-foot lot notwithstanding municipal upgrading of minimum lot sizes for the zone in question by revision of the zoning ordinance three months after final planning board and governing body approval of the resubdivision but three weeks prior to the application for the building permit. We are required to reevaluate, as against the particular fact-situation here presented, interpretations of the Municipal Planning Act (1953), particularly N.J.S.A. 40:55-1.18, set forth in Hilton Acres v. Klein, 64 N.J. Super. 281 (App. Div. 1960), mod. 35 N.J. 570 (1961); Levin v. Livingston Tp., 35 N.J. 500 (1961); Pennyton Homes, Inc. v. Planning Bd. of Stanhope, 41 N.J. 578 (1964); and, particularly, United States Home & Develop. Corp. v. LaMura, 89 N.J. Super. 254 (App. Div. 1965).
The action of the Law Division was essentially an affirmance of the determination of the Springfield Board of Adjustment on remand, apparently acting as an appellate agency to review the denial of a building permit pursuant to N.J.S.A. 40:55-39(a), that defendants were entitled to the permit as a matter of law under the Planning Act. Defendants, however, had not made such a claim before the board, but were seeking a hardship variance from the upgraded minimum lot size and side-yard requirements of the revised zoning ordinance, pursuant to N.J.S.A. 40:55-39(c), and the matter was heard before the board solely on that theory. The legal issue on which the decision was ultimately based was posed, near the end of the hearing, by the board attorney, and the parties were requested to file memoranda on the point. The board made no finding or determination on the basic hardship-variance question brought before it by defendants' application (except as to the side-yard requirement).
The essential facts, some of which were elicited on and after argument before us, are as follows. Defendants own a 55,013-square-foot parcel of land situated on a center island in U.S. Highway 22 in Springfield. Prior to the subdivision approval there were a few small scattered structures *338 thereon, according to the filed map. There is commercial use of other parts of the island, including a carpeting store of plaintiffs. Traffic north of the island is one-way west-bound and that to the south is one-way east-bound. The property abuts both lanes. We may take judicial notice that this highway, generally, and at the location in question, is one of the most heavily traveled and congested in the State. The tract was previously designated as Lots 3, 4 and 5, Block 115 on the township tax map, and was zoned G-B (General Business) under the 1955 zoning ordinance, subject to a minimum lot area of 7,500 square feet and width of 60 feet.
Some time in May 1968 defendants applied to the planning board for resubdivision of the tract so as to reduce the number of lots to two, although sale of neither was then contemplated but simply, according to the application, "commercial development." Lot 3 was to be decreased from 29,592 square feet to 26,830 and Lots 4 and 5 combined and increased from 25,420 square feet to 28,182.
The planning board on June 4, 1968 recommended to the township committee approval of the separate applications of defendants for preliminary and final approval of the resubdivision, and that body concurred June 11, 1968. (The Springfield ordinance provides for approval by the governing body of planning board action.) The only specific condition imposed by the board was that new Lot 4 (former 4 and 5) not be allowed egress to west-bound Route 22 in view of the limited frontage on that side of the lot (78.48 feet) (the frontage of the entire holding on that side was 228.48 feet). The minutes of the planning board hearing show a statement by the township engineer that "the existing utilities are adequate."
On September 24, 1968 the township committee adopted on final reading a revised zoning ordinance placing the property in question and other highway property in a new H-C (Highway Commercial) zone, with minimum lot area of 40,000 square feet, width of 100 feet and depth of 200 feet.
*339 That revision stemmed from a comprehensive master plan adopted by the Springfield Planning Board on July 1, 1965 which proposed the establishment of a highway commercial district consisting of three center islands in Route 22 (including the subject property) and the northern border of that highway. The plan recommended that "Route 22 commercial development should be controlled" and mentioned, among other deleterious conditions along the highway, "dangerous traffic conditions" and "congestion." The planning board prepared an implementing first-draft revision of the zoning ordinance dated December 1966 calling for 40,000-sq.-ft. minimum lots for the proposed new highway commercial district. The board in May 1967 submitted a report to the mayor and governing body, including a rough draft revision of the ordinance with the same 40,000-sq.-ft. provision. There were meetings with various groups by the planning board and township committee to discuss the final draft of the ordinance, and it was introduced and passed on first reading May 28, 1968, and, as noted, on final reading on September 24, 1968 after publication on June 6, 1968 of the entire ordinance and of notice of its passage on first reading.
The minutes of the hearing of the resubdivision proceeding state that plaintiffs' attorney objected to the resubdivision on the ground "the lots would be undersized"  a statement which plaintiffs say, without contradiction, referred specifically to the then pending revision of minimum lot sizes of which defendants must be deemed to have been aware in the light of the aforestated history.
On October 16, 1968 defendants applied to the building inspector for a permit to build a restaurant on new resubdivided lot 4, to cost $34,000, with provision for off-street parking for 46 cars. Defendants had previously negotiated a lease for operation of the restaurant to a national highway-restaurant chain. The application was denied by the building inspector on the grounds (a) location of the plot in the "Highway Commercial District" calling for a minimum lot *340 area of 40,000 sq. ft. ("under the Township of Springfield Schedule of Limitations, dated May, 1967 [sic] * * *") whereas the lot was only 28,182 sq. ft.; (b) failure to meet the side-yard requirement of 25 feet.
There followed the proceedings before the board of adjustment alluded to above. After the hearing the board adopted a resolution which, in effect, approved the "variance" as to lot size on the ground that the applicant was entitled to build on the resubdivided lot because the resubdivision had been approved prior to the adoption of the revised zoning ordinance and the applicant had applied for a building permit within "a reasonable time" after grant of final subdivision approval. It is obvious that in this regard the board was applying its understanding of our decision in U.S. Home & Develop. Corp. v. LaMura, supra, wherein we held, in a case involving a residential development project of hundreds of homes and substantial concomitant improvements, that the Planning Act guaranteed the developer a reasonable time after final subdivision approval to apply for building permits free from any subsequent municipal upgrading of minimum lot sizes by ordinance amendment. The board here denied the side-yard variance on the ground the restaurant building could be so located on the lot as not to need it.
Plaintiffs thereupon instituted an action in lieu of prerogative writs seeking to set aside the area variance. Defendants' answer raised the defense of immunity from municipal upgrading of "general terms and conditions" under N.J.S.A. 40:55-1.18. Both sides moved for summary judgment. Defendants submitted in support of their motion an affidavit of one Saul Seltzer, an engineer-employee. This described the activities undertaken by defendants in purported reliance on the subdivision approval. These included demolition of buildings, removal of debris, preparation of plans and surveys, and negotiations with a potential lessee. Much of the affidavit is on information and belief and conclusional. *341 Dates are not specified, and the only evaluation of expense is $3,000 for demolition and removal of debris.
At the hearing on the motions counsel for the board explained that the use in the resolution of the term "variance" was an error, and that the decision was actually made under N.J.S.A. 40:55-39(a). The court remanded for a clarification of the resolution by the board.
The board complied with the order by adoption of a revised resolution in substance the same as its first action but omitting allusion to the granting of a variance. Thereupon the trial court filed an opinion essentially in agreement with the conclusions of law and fact contained in the board's resolutions. Express reliance was had on our opinion in LaMura, referred to above, the court holding that the four-month interval between grant of final subdivision approval and application for building permit was reasonable as a matter of law, the corresponding interval in LaMura having been ten months.
After careful reflection upon the issue presented, we are satisfied that on the special facts here presented, the immunization of defendants from the normal municipal legislative power in respect of zoning beyond the immunity any other owner of similar property would enjoy were there no prior resubdivision of the property is unwarranted and not compelled by any prior judicial construction of the Planning Act. Had defendants' lots originally been two in number, and in the dimensions of the here resubdivided lots (so as not to require an application for resubdivision approval by the planning board), defendants would without question be fully subject to the terms of the revised zoning ordinance. It is elementary that short of constitutional considerations a property owner has no vested right to build on a lot as against subsequent upgrading of minimum lot sizes by zoning ordinance or amendment thereof. Even the grant of a building permit would not immunize him from subsequent upgrading of lot sizes by ordinance as late as the pendency of judicial proceedings, absent substantial pecuniary reliance *342 on the permit prior to notice of the pendency of the revised ordinance, Morris v. Postma, 41 N.J. 354, 362 (1964), or a situation of inequitable conduct by, or circumstances justifying applying estoppel against the municipality, as in Tremarco Corporation v. Garzio, 32 N.J. 448 (1960), and Gruber v. Mayor, etc. Raritan Tp., 39 N.J. 1 (1962), respectively.
Here, approval of defendants' resubdivision application called for no investment on their part in streets, utilities, drainage or any of the other diverse kinds of expenditures for improvements ordinarily imposed upon the developer of even a moderate-size tract of raw land. The expenses, and activities on the property, necessarily attendant upon readying the land for construction of a restaurant for a lessee, were precisely the same as they would have been had the lot lines originally been as resubdivided so as not to have required official resubdivision approval. The necessity for applying for resubdivision approval in this case was simply the circumstance that although the statute permits the municipality to exempt from the requirement of approval such subdivisions (which by statutory definition includes resubdivisions, N.J.S.A. 40:55-1.2) wherein the number of new lots is less than a given number or those which do not involve new streets (N.J.S.A. 40:55-1.14), the Springfield planning ordinance did not provide for such exemptions, and defendants could never have legally sold any portion of the land in units of the altered size without official approval pursuant to the act. N.J.S.A. 40:55-1.23.
Notwithstanding the strong considerations grounded in public policy against giving defendants any special immunity from the salutary exercise in the general public interest of the municipal zoning power in this situation, they argue that the literal terms of the statute and the decisions in the Hilton Acres and LaMura cases, supra, compel it. The statutory language relied upon reads (N.J.S.A. 40:55-1.18):
The governing body or the planning board, as the case may be, may tentatively approve a plat showing new streets or roads or the resubdivision of land along a mapped street. This tentative approval *343 shall confer upon the applicant the following rights for a 3-year period from the date of the tentative approval:
(1) that the general terms and conditions upon which the tentative approval was granted will not be changed.
(2) that the said applicant may submit on or before the expiration date the whole or part or parts of said plat for final approval.
The final approval by the governing body or the planning board, as the case may be, of a plat showing a new street or the resubdivision of land along a mapped street shall expire 90 days from the date of such approval, unless within the period such plat shall have been duly filed by the owner or his agent with the county recording officer.
In Hilton Acres this court held, and the Supreme Court agreed, in a case involving a large residential development in a rural area, that the "general terms and conditions" not changeable by the municipality under the statute after tentative approval include minimum lot sizes. But in so holding we explained:
In general, then, the concept for immunity on tentative approval is geared to subdivision developments of the larger kind, where substantial investment of time, effort and money is contemplated, and the risk of capital loss is commensurate. The three-year immunity is fairly to be construed as intended to afford reasonable assurances to developers of that scope that they may safely make the kind of investment thus envisaged, after gaining a tentative planning board or municipal approval (as the case may be), without risk of major or substantial disturbance of their plans by the local authorities for the specified three-year period. To this qualified extent the statutory policy is for a period of enforced immobility of the local regulatory power relative to the particular subdivision development. [64 N.J. Super. at 291-292]
In Levin v. Livingston Tp., supra, the court considered but did not adjudicate the question of the period of time immunity from changes in general terms and conditions would extend after final approval. The intimation, however, was that the Legislature may have intended such protection for the developer until "a reasonable date after the grant" of final approval (35 N.J. at 519). The same question was again adverted to but left open in Pennyton Homes, Inc. v. Planning Bd. of Stanhope, supra (41 N.J. at 585) and in *344 Virginia Construction Corp. v. Fairman, 39 N.J. 61, 69-70 (1962).
In Hilton Acres, Levin, Pennyton Homes and Virginia Construction, substantial residential developments with commensurate expense for improvements were involved. In the Levin and Pennyton Homes cases the court took a fairly restrictive view, favorable to the municipalities, as to the kinds of improvements which could not be upgraded by the municipality after tentative approval as "general terms and conditions."
In LaMura, supra, against the case backdrop outlined, we held that the developer (large scale) had a reasonable time after grant of final approval to apply for building permits as against subsequent municipal upgrading of lot sizes. We avoided answering the question whether the developer had an absolute period of protection of three years from the date of tentative approval no matter how short the interval between tentative and final approval. Squarely facing that question here, we have concluded that the Legislature intended the three-year period mentioned in the statute to represent merely the outer limits of the period within which the developer to whom tentative approval is granted must apply for final approval and be protected meanwhile from changes in general terms and conditions. Since grant of final approval connotes readiness of the developer to build,[1] he thenceforth is afforded only a reasonable time to apply for building permits, as against effective intervening upgrading of lots, not necessarily the arbitrary period of three years from grant of tentative approval, which may in a particular case be vastly excessive as against the general public interest in the normal exercise of the zoning power. The general principle of primacy of the public interest in the construction of the Planning Act, stressed in the cited *345 Supreme Court cases, e.g., Pennyton Homes (41 N.J. at 582), also conduces toward the hypothesis just stated. It is a basic principle of statutory construction that the "letter gives way to the rationale of the expression. * * * The spirit of the legislative direction prevails over the literal sense of the terms." Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956). Even specific language may be avoided to escape a result it would be "inconceivable" to think the Legislature intended. Graham v. Asbury Park, 68 N.J. Super. 256, 263 (App. Div. 1961), aff'd 37 N.J. 166 (1962).
In any event, as implied anticipatorily above, our decision here is based on the view that the Legislature cannot reasonably be deemed to have intended either three years from tenative approval or a "reasonable time" after final approval as a period of immunity from exercise of the zoning power by the municipality in such a case as here. The literal terms of the statute do not stand in the way of our conclusion. As noted, the statute does not fix a period of immunity after final approval. Therefore, the mere circumstance that section 1.18 of the act grants certain rights on tentative approval to applicants for approval of plats showing, inter alia, "resubdivision of land along a mapped street" (presumably including this plat), does not support an argument that the statute itself guarantees any period of immunity after grant of final approval regardless of attendant circumstances.
There is another reason alternatively warranting denial to defendants of automatic protection against upgrading upon approval of the resubdivision. The statutory scheme is based on the concept that before final approval is granted the governing body may require installation (or performance guarantee thereof) of such improvements as "street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures" or other subdivision improvements required *346 by the ordinance. N.J.S.A. 40:55-1.21; see also 40:55-1.20.
Implicit in the provision that the approving body "may * * * tentatively approve a plat," in which case there is conferred upon the applicant the right "for a 3-year period from the date of tentative approval * * * that the general terms and conditions upon which the tentative approval was granted will not be changed," is the contemplation that the tentative approval procedure is to be used only when terms and conditions are imposed, when improvements of the character mentioned above are called for by the approving body. When, as in the present case, no such improvements are called for by the approving body, then, in our view, no statutory authority exists for a grant of tentative approval. All that is required or authorized is final approval so that the plat showing the revised lot lines may be filed. Since the only express reference in the statute to a period of immunization of a plat from change in general terms and conditions is that specified in section 1.18 upon grant of tentative approval, it should follow that no such period should ordinarily ensue consequent upon final approval in a case where separate tentative approval was not required because of absence of necessity for improvements.
The rule of "reasonable period after final approval" enunciated in LaMura was a matter of judicial construction of the statute in the light of the fact situation there presented. That fact situation, as noted above, was one of a mass residential developer, projecting the construction of hundreds of homes with attendant costly tract improvements. To upset such a developer's plans instantly upon grant of final approval by municipal upgrading of the lot sizes inherent in the plats tentatively and finally approved by the planning board would obviously be grossly unfair to the developer and violative of the intent of the broad legislative scheme for development control. Similar large developments with attendant tract improvements were involved in all the Supreme *347 Court cases cited above discussing the protective features of section 1.18.
As indicated, the Supreme Court has consistently sounded the theme of primacy of the public interest in construction and interpretation of the Planning Act. Here it is obvious that the municipal legislative purpose in upgrading lot sizes and dimensions of highway commercial property such as this island tract abutting highway lanes on both sides, was, at least in part, to subserve considerations of convenience and safety in relation to automotive traffic into and out of such premises. The larger the specified dimensions, the greater the potentiality for adequate and safe egress and ingress, as well as for handling of off-street parking (there is obviously no parking on this highway at any time). Because of the limited highway frontage of newly resubdivided Lot 4, as noted above, the planning board had to forbid egress into the west-bound lane, a natural course of egress for restaurant customers going west. It is clearly inferable from the evidence taken by the board of adjustment that use of defendants' tract as a unitary whole would eliminate the need for the limitation imposed by the board and greatly promote the safe use of the property.
We emphasize the particularly salutary purpose and object of the zoning revision in this case to demonstrate the incongruity of a result which would insulate the defendants-property owners from such improved standards of safety for no better reason than that they had previously decided to have their tract divided into two lots in place of the former three, and that the technical requirements of the planning act and ordinance required planning board and governing body approval to validate such resubdivision against the future possibility of a sale of either of the lots.
We do not here hold that the "reasonable time" rule of LaMura is necessarily inapplicable to small as well as large subdividers or to any "resubdivision of land along a mapped street." One can conceive of the possibility of situations where attendant improvements required of the developer by *348 the local agencies or other attendant equitable circumstances might appropriately call for some relief against precipitate municipal disturbance of the developer's plans after final approval, either on the basis of the "reasonable time" rule of LaMura or one or another of the balance-of-equities or estoppel principles developed in the Morris, Gruber or Tremarco cases, cited above. We decide only that for the reasons stated above none of those principles apply here to relieve these defendants from the effect and operation of the zoning revision of 1968.
Plaintiffs have made several additional arguments against the result reached below. We do not decide them in view of the conclusions reached.
Although we reverse, defendants are in all fairness entitled to be remanded to the board of adjustment for a determination on their original application for a (c) variance, which was fully heard before the board decided the matter on the purely legal basis we have here held erroneous. Further hearings will be in the discretion of the board. The court retains jurisdiction for the limited purpose of considering directly any review which may be sought by the party aggrieved by the actions of the board of adjustment on remand. R. 2:9-1(b). Notice of intention therefor shall be filed within 15 days after such action.
Reversed; no costs.
NOTES
[1] "[Final approval] contemplates that a subdivider has decided to go ahead and that he is ready to proceed promptly with complete development and building construction at least in the section for which he seeks such approval." Levin, supra (35 N.J. at 513).